The counsel for plaintiff in error filed the following petition for re-hearing.

It is believed, by the counsel for Greathouse, that a re-examination of this cause, upon some questions not agitated in the opinion heretofore delivered, must result in a reversal of the judgment of the court below.
The record shews that, in July or August, 1826, Throckmorton kept a tavern at the Lower Blue Licks; that Greathouse called at his tavern as a guest, where he met with Smedly, who was at that time hoarding with Throckmorton; that Greathouse and Smedly played at Faro until Smedly won from Mm $150; that Smedly was, at that time, indebted to Throckmorton in the like sum of $150, of which $20 were for boarding and $130 for money previously won from him by Throckmorton at Faro; that it was agreed among the three, that Throckmorton should give Smedley credit on his books, which he did, for the $150; that Smedly thus owed Throckmorton, in consideration of the'$150, *25 winch Smedly had won from Greathouse, and that Throckmorton should look to Greathouse for the money; or in other words, Greathouse verbally assumed to pay Throckmorton the boarding and gambling debt of Smedly, in consideration of the gambling debt which he owed Smedly.
Petition for a re-hearing.
This promise of Greathouse is clearly within the statute of frauds and perjuries, and therefore null and void. The case of Waggoner vs. The Bells, IV. Monroe 7, is, on this point, desicive of the casé.
Herbert G. Waggoner applied to Alexander Wag-goner to borrow money, who, not having it to lend, procured various sums from the Bells, in his own name, amounting in the whole to about $2500, which he paid over to Herbert G. Waggoner.— This money, except about $100, was repaid, at different times, to the Bells, by Herbert G. Waggoner, who contended that he had paid the whole amount. The matter was referred to arbitrators, and Herbert G. Waggoner, agreed to pay the Bells the balance if the arbitrators should award it against him. — - This court decided that his promise was void, because it was not in writing. They say that Alexander Waggoner had not been released from the demand by the Bells; that he was therefore still bound to them for the debt, and that, without such release, Herbert G. Waggeuer could not be made responsible upon his verbal assumpsit.
In this case, no reZease'was executed by Throckmorton to Smedly, or by Smedly to Greathouse..— Every thing was verbal, except the entering of a credit to Smedly on the books of Throckmorton. Should this be construed into a release, it would render the statute of frauds and perjuries a dead letter. In ninety-nine cases out of one hundred in the mercantile world, the original debtor obtains a credit for the demand, and the person who assumes to pay it, is charged with the amount.
But again; It is contrary to the policy of the statute- against gaming, to permit any arrangement for the payment of a debt, with a person who knew of its vicious origin, to be the basis ol its recovery in a court of justice. See, on this subject, Hussey vs. *26 Jacob, I Salkeld 344. Carthew 356, Holt 328, and I Lord Raymond 87. See also, Bowyer vs. Bampton, II Strange 1155; and what Lord Mansfield in Lowe vs. Waller, Dougless 744. See also, Thompson vs. Moore, IV. Mon. 79, 80; I do. 114, 15; I Dallas 429; IV. do. 298; V. Johnson’s Rep. 327, 335; III. Cranch 242, 248; and I Binney’s Rep 110, 123.
Petition for a re-hearing.
The authorities first above cited shew that a person who is privy to the illegal and vicious consideration, can never recover a gaming debt. The others go a step farther, and establish the doctrine, that the taint or vice, of a gaming deht, follows it into the hands of an assignee for a valuable consideration, although he was ignorant of the turpitude of the consideration.
The only exception to this doctrine will he found in the case of Chiles vs. Coleman, II. Marshall 300. That if the looser of money won at gaming, in consideration of a just debt, which the winner owes to a third person, gives his bond to such third person, who is ignorant of the turpitude of the consideration, it will be obligatory. If however, such third person -understands the true nature of the demand, the new bond will receive the taint of the original transaction, and will be null and void.
This view of the subject, might render it unnecessary to disturb the ground on which this court has predicated its opinion. But it is respectfully suggested, that it is not tenable, either by the tlecissions of the English courts, previous to 1776; those of our own state, or even those of New York.
Lord Mansfield, who was one of the most liberal, as well as enlightened judges, who ever sat in West-minister Hall, and who made justice his polar star, to guide him through the mazes of technicality, recognized the doctrine advocated by the counsel for Greathouse, as late as 1770, in the case of Nightingale vs. Devisene, V Bur. 2592. This was an action for money had and received. It was in proof, that £500, in East India stock, had been transferred to 'the defendant, for the use of the plaintiff. His Lordship, in delivering the opinion of the court of King’s Bench, in this case, said: “We are all of opinion ihat this action, ‘for money had and received, to the *27 use of the plaintiff,’ will not lie in the present case, where no money was received.”
Petition for a re-hearing,
In the case of Lucket vs. Bohannon, III Bibb, 378, which was assumpsit for money had and received, and mouey paid for defendant, this court says: It is clear, an action for money had and received, or for money laid out and expended, cannot be maintained, where no money has been received or paid.
In the case of Cumming and Cumming vs. Hackley and Fisher, VIII Johnson 202, which was an action of assumpsit for money paid by the plaintiff for the defendants, the supreme court of New York say: “But is such a change of security the actual payment of money under this count?” “In Taylor and Higgins, III East, 169, “the court of King’s Bench, held “it not to be equivalent to the payment of money, “and not sufficient to entitle the party to recover “under such count. It seems to be a rule, that under “a count for money paid, it must appear that money was “actually advanced.”
This case was decided after solemn argument, by eminent counsel, and upon a review of the English cases on the subject, both before and since 1776.
Being for money paid by a change of securities, it is believed to be more in point, than the case of Beardsley and Root, referred to in the opinion of this court.
No English case, either ancient or modern, has gone the length of Beardsley and Root. Some modern cases have decided, that this species of action could be maintained, where bank bills or bills of exchange, had been received; but it was on the ground that they were money, and consequently that-money had been actually received.
The case of Beardsley and Root is, however, clearly distinguishable from the case of Greathouse and Throckmorton, as well as from those of Lucket and Bohannon, and Hackley and Fisher. It was a case of money had and received'; by an attorney for the use of his client, and not for money lent or-paid? The attorney had caused an execution, in favor of his client, to be levied on a tract of land; had become the purchaser of the land under the execution; had *28 received a deed for the land from the sheriff; had given him a receipt for the amount of the execution., and directed hun to return it satisfied, which he accordingly did. A stronger case for the maintainance of an action for money had and received, where the dollars had not been actually counted out and paid, can scarcely be imagined. But it has very little similitude to that now before the court, and should not be sufficient to overturn the doctrine of the common law, as recognized by Lord Mansfield, by this court, and the supreme court of New York, in the case above cited. A re-hearing is therefore respectfully solicited.
Statutes against gamstruedstrictly
A °wes B at nfaro,W°B ows C, A applies to C to pay B, which O does by discharging B from the same sum due to C from B, which A owed B, C sues A for money paid, &c. it is no defence to allege the consideration between A & B,and B and C to have been money won at faro. The consideration upon which C founds his action, is the surrender of his claim upon B, and his discharge of A’s debt to B, at the instance and request of A.
jDepew for Greathouse.